HENDRICKSON-MCCABE CONSTRUCTION COMPANY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

### Claim No. 17418.

Court of Claims, May, 1923.

**Claims against the state — construction of highway — state not liable for failure of town to build a bridge — expense of additional haulage because of absence of bridge cannot be recovered.**

While the state is bound to provide a suitable place on its own right of way where the work called for by a contract for the improvement of a state highway can be done in a reasonable, orderly and economical manner, the state is in no way obligated to construct a bridge or to do any other work that by statute one of the towns between which the improvement was to be made was obligated to do.

When claimant made the contract with the state the physical conditions were visible to it and it knew that there was no bridge crossing a certain creek and knew that the gravel pit from which it obtained material used in the construction of the road was so located that, if the bridge had been built, claimant would not have been compelled to haul much of its material so far as it was compelled to haul the same over a large hill, at times needing the assistance of a tractor engine because of the absence of the bridge. Upon the hearing of a claim for damages for being delayed in the performance of the contract it appeared that the bridge which the town was to build over the creek was not completed and in condition for use until about three weeks after the work under claimant's contract should have been completed. It further appeared that only a short distance from the new proposed road there was a public highway which had a bridge crossing the same creek, built and maintained by the town, and that the approach to the highway under construction was accessible from said bridge and was substantially as near to the new highway from the gravel pit. It also appeared that it would have been inexpensive to strengthen this bridge sufficiently to carry any of the claimant's machinery across it. It also appeared that it would have been an inexpensive matter to have strengthened the old wooden bridge across the old highway and to make a right of way to the new road so that claimant could move its machinery over it, but it did not appear that claimant made any effort to have the town do so, as it should have done or at least asked for permission to strengthen the bridge. *Held,* that the claim should be dismissed upon the ground that the state was not liable for the failure of the town to build a bridge crossing the creek.

CLAIM for damages for being delayed in building highway.

*Young, Farmer & Daley,* for claimant.

*Henry P. Nevins* and *Lyman A. Kilburn,* deputies attorney-general, for State of New York.

MORSCHAUSER, J.   The claimant filed a claim against the state alleging that it had a contract with the state to build a highway known as the Caledonia-Mount Morris, part 3, state highway No. 5666, which contract was for the improvement of a road located in Livingston county.   The claimant alleges that by reason of the failure of the construction of a bridge to be built by the town of Leicester not having been built in sufficient time, the claimant was delayed by being compelled to take a route, other than the one leading across the bridge, which route was much longer and further and more expensive than the route that could have been taken if the bridge had been built for the purpose of carrying its machinery over the road, and also carrying gravel from the gravel pit to the road.

The contract was entered into, between the claimant and the state, on or about November, 1921, and on December 13, 1921, the claimant received notice from the state to start work.   The contract provided that the road should be completed by July 1, 1922.   The road was to be built starting from the town of Leicester and running therefrom a distance of one and eighty-five one-hundredths miles between the villages of Leicester and Mount Morris.   The bridge, which the town was to build over the creek, was not completed and in condition to be used until July 21, 1922.

The gravel pit, from which the claimant obtained material used in the construction of the road, was so located that if the bridge over the creek had been built the claimant would not have been compelled to haul much of its material as far as it was compelled to haul it by reason of the absence of the bridge.   The haul was considerably further, and the claimant was compelled to haul the same over a large hill, and at times needed the assistance to haul its trucks of a tractor engine.

The damage that the claimant sustained by reason thereof it alleged in its claim was the sum of $11,851.66.   On the trial the claimant asked leave to amend its claim by increasing the amount as to item of cost of labor from $5,345.13 to $6,109.63, and increasing the cost of transportation from $2,400 to $3,281, and to change the amount of the increase cost of overhead expense for superintendents, etc., from $1,050 to $1,650 and the rental value of machinery from $2,750 to $2,966, which amendments were allowed.

The obligation to build the bridge across the creek in the new road was upon the town of Leicester and no obligation existed upon the part of the state either to build or maintain the bridge.   This bridge was located across the proposed highway at station 855

and about 750 feet from the south end of the road contracted to be built.

It also appears from the evidence that there was a public highway but a short distance from the new proposed road, which had a bridge crossing the same creek built and maintained by the town, and that the approach to the proposed highway under construction was accessible from this bridge and was substantially as near to the new highway from the gravel pit. This bridge a year before had been strengthened and a number of new sleepers placed in it by the commissioner of highways of the town and had been used once or twice by the claimant to carry one of its machines over it, which weighed within two tons of the weight of the steam shovel used by the claimant.

It also appears from the evidence that it would have been inexpensive to reinforce or strengthen the bridge in question sufficient to carry any of the claimant's machinery across it.

The claimant under the contract was to complete it on or before the 15th day of July, 1922. The claimant on the 13th day of July, 1922, asked for an extension of time within which to complete its contract and sent to the state commission of highways an application in writing which contained, among other things, the following language and was in the following form:

" This application for extension of the date of completion is made for the following reason: *Continuous wet weather preventing hauling.*

" Dated July 13, 1922.
                    " HENDRICKSON-MCCABE CONSTRUCTION CO., INC.
                                                " *Contractor.*
                              " H. W. BARNES,
                                              " *Secretary.*

" The foregoing application is hereby approved for the following reasons: Continuous wet weather — delay on town bridge.

" With rubber stamp.
                    " O. K.
                                        " *Commissioner.*"

No signature appears over the word " Commissioner."

At the bottom of the application were the words: " I recommend that no charge be made for engineering and inspection. Charles W. Edwards, Division Engineer. Dated July 19, 1922."

The words in this application " continuous wet weather preventing hauling " were written by the president of the contracting company and no statement was made at that time as to any delay caused by the absence of the town bridge.

It appears from the evidence that the words " delay on town bridge " were written in afterwards by the secretary of the contracting company and written below the words " Hendrickson-McCabe Construction Co., Inc., Contractor, H. W. Earnes, Secretary," and were also written below the words " The foregoing application is hereby approved for the following reasons." The extension was not granted or signed by the commissioner, and was refused by him because of the words " Delay on town bridge."

We do not think that the state is liable for the failure of the town to build the bridge across the creek as alleged by the claimant. The obligation to build a bridge of this span, the bridge being a span of sixteen feet, was by statute placed upon the town. When the claimant made this contract the physical conditions were visible to it and it knew that there was no bridge there and knew the location of the gravel pit.

Under the contract with the state the contractor agreed as follows: " 3. The Contractor further agrees that he is fully informed regarding all of the conditions affecting the work to be done and labor and materials to be furnished for the completion of this contract, and that his information was secured by personal investigation and research and not from the estimates of the State Commission of Highways; and that he will make no claim against the State by reason of estimates, tests or representations of any officer or agent of the State."

While it is true that the state was bound to provide a place where the work could be done in a reasonable, orderly and economical manner, this obligation rested upon the state so far as furnishing a suitable place upon its own right of way. It was in no way obligated to construct a bridge or do any other work that by law the town was obligated to do.

In the case of *Brennan Construction Co.* v. *State*, 117 Misc. Rep. 816, the state failed to construct a culvert upon its own right of way which caused a delay. In the *Brennan* case there was a culvert to be built, which the state delayed in doing. This culvert was located on the road under construction that the contractor had agreed to build, but the obligation to construct this culvert was upon the state and it had full control of the right of way and, therefore, its failure to construct this culvert caused damage to the contractors and it was held that the state was liable for the damages so caused.

It also appears from the evidence in this case that it would have been an inexpensive matter to have strengthened or reinforced the old wooden bridge across the old highway and also making

a right of way to the new road so that the claimant could move its machinery over it. It may be that the claimant could not lawfully interfere with this old wooden bridge nor strengthen it, but it does not appear that the claimant made any effort to have the town do so, which, we think, the claimant should have done, or at least asked for permission to strengthen the bridge. If this had been done the claimant could have used the old wooden bridge and there would have been substantially no loss or damage to it. It is a well-settled principle of law that there can be no recovery of losses which might have been prevented by reasonable efforts on the part of the person injured. The efforts which the injured party must make to avoid consequences of the wrongful act or omission need, however, only be reasonable under the circumstances of the particular case. *Norske Ameriekalinje* v. *Sun P. & P. Assn.,* 226 N. Y. 1; *Howard* v. *Daly,* 61 id. 362; *Johnson* v. *Meeker,* 96 id. 93; *Alberti* v. *N. Y., L. E. & W. R. R. Co.,* 118 id. 117.

Where the person injured should make a reasonable effort to avoid or reduce damages he will be allowed to recover the expense necessarily incurred in so doing and he will also be allowed to recover the expense of a proper effort even though it proves unsuccessful. *Norske Ameriekalinje* v. *Sun P. & P. Assn., supra; Baldwin* v. *United States Telegraph Co.,* 45 id. 744; *Wright* v. *Bank of Metropolis,* 110 id. 237.

The claim, therefore, is dismissed on the merits.

ACKERSON, P. J., concurs.

Claim dismissed.